## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.                                    **Case  No.  04-40168-01/02/03-RDR**

REBECCA BARNHART, JEFF
BARNHART and MARLON CARROLL,

        Defendants.

——————————————————————————

## MEMORANDUM AND ORDER

This case is before the court upon a second round of pretrial motions.  The first round of motions was filed by defendants Jeff Barnhart and Marlon Carroll before defendant Rebecca Barnhart was made to appear in this case.  Following an evidentiary hearing, the court issued an order ruling upon all of those motions except for a motion to sever.  Doc. No. 51.  Now, defendant Rebecca Barnhart has been made to face the charges in this case.  She has filed pretrial motions, and defendant Marlon Carroll has supplemented a motion to suppress and brought additional motions.  The court has conducted a hearing upon the second round of motions and is prepared to rule upon most of the motions.

Defendant Rebecca Barnhart's motion to suppress (Doc. No. 84)

This motion seeks to suppress evidence obtained after the

truck Rebecca Barnhart was driving was stopped and she and others were arrested in Doniphan County, Kansas on February 11, 2003.  Rebecca Barnhart contends that she was illegally stopped and detained.  Defendant Marlon Carroll joins in this motion.

The court heard testimony on this motion from:  Michael Wilkerson, Timothy Hersch, Michael Liechti and Jenny Taylor.  On the basis of this testimony, the court makes the following factual findings.  On February 11, 2003 Jenny Taylor was a loss prevention officer at a Wal-Mart store in St. Joseph, Missouri, which is in Buchanan County just across the Kansas state line. Taylor had been trained by local law enforcement on the methods and materials used to manufacture methamphetamine.  On February 11, 2003 she observed four adults purchase approximately 15 boxes of cold medicine containing pseudoephedrine at about the same time and exit her Wal-Mart store.  She thought this was suspicious.  A fifth adult, named Beau Kerns, was with the other four in the parking lot.[1]  He returned to the store and was observed shoplifting more cold medicine.  He was stopped in the parking lot by Taylor as he was walking towards and looking at a pickup truck containing the other persons Taylor had seen buying cold medicine.  Kerns was stopped when he was within 45

_____

[1] In our previous order, Doc. 51 in this case, we spelled his name "Bo Kearns".

2

feet of the truck.  The truck left its parking place and drove by Taylor as she detained Kerns.  Taylor took note of the truck, its occupants and its Kansas license plate.  Taylor called the St. Joseph police and spoke to officer Mike Wilkerson. Wilkerson was familiar with Taylor and had worked with her on numerous occasions.

Taylor described the persons who purchased the cold medicine, the truck they left in, and the shoplifting incident to Wilkerson.  She also stated that air tubing had been purchased.  Air tubing is an item used to manufacture methamphetamine.  Taylor thought that Kerns was connected to the persons in the truck who had purchased the cold medicine, even though she did not see him with them in the Wal-Mart store.  At that time Wilkerson had significant experience and training in investigating methamphetamine crimes.  He ran a check on the license plate and learned that the truck was registered to a Chris Barnhart.  Wilkerson contacted the Sheriff of Doniphan County, Kansas because he thought the truck might be driving back to Kansas through Doniphan County as it left St. Joseph. The Sheriff of Doniphan County told Wilkerson that Chris Barnhart was being investigated by the Kansas Bureau of Investigation upon suspicion that he was part of a conspiracy to make and distribute methamphetamine.  Wilkerson asked that the

truck be stopped because he thought the cold medicine and air tubing was purchased to make methamphetamine.

Timothy Hersch was a patrol officer in Doniphan County, Kansas at that time.  He heard the radio traffic regarding the pickup truck.  When he spotted the truck, he stopped it. Rebecca Barnhart was driving the truck.  The truck carried four adults and one child.  Hersch did not arrest the occupants or search the truck.

Michael Liechti was working for the Doniphan County Sheriff's Office during the events in question.  He also had considerable training in the materials used to make methamphetamine.  He had prior knowledge that members of the Barnhart family were being investigated for manufacturing methamphetamine, but the name Chris Barnhart did not ring a bell with him when he heard the radio traffic regarding the pickup truck.  When he arrived at the scene of the stop, there were several officers there, including some from Buchanan County, Missouri.

The adults in the truck matched the description of the persons Jenny Taylor described as buying pseudoephedrine at the Wal-Mart in St. Joseph.  The officers saw six unopened cans of starter fluid and a container of muriatic acid in the back of the truck.  Liechti knew these materials are used to make

methamphetamine.   There was also a rifle.   Based upon the
information which has been summarized above, Liechti decided to
arrest the adults in the truck.   These persons were defendant
Rebecca Barnhart, defendant Marlon Carroll, Chris Barnhart and
Cynthia "Cindy" Herrera.   It appears to the court that the
arrest occurred 15 to 30 minutes after the truck was stopped.

"A law enforcement officer may stop and briefly detain a
person for investigative purposes 'if the officer has a
reasonable suspicion . . . that criminal activity "may be
afoot."'"   U.S. v. Soto Cervantes, 138 F.3d 1319, 1322 (10th
Cir.) cert. denied, 525 U.S. 853 (1998) (quoting U.S. v.
Sokolow, 490 U.S. 1, 7 (1989)).   "While an investigative
detention does not require probable cause, it does demand
something more than an inchoate and unparticularized suspicion
or hunch."   U.S. v. Davis, 94 F.3d 1465, 1468 (10th Cir. 1996)
(internal quotation marks omitted).   "[W]e look at the objective
facts, not the officer's state of mind."   U.S. v. Neff, 300 F.3d
1217, 1222 (10th Cir. 2002).

Here, we believe the evidence supports a reasonable
suspicion of criminal activity.   The officers who directed the
stop of the truck knew that the occupants of the truck had
purchased 15 boxes of cold medicine pills containing
pseudoephedrine and air tubing less than an hour before the

stop.  They knew these are items used to make methamphetamine.
They knew that the truck was registered to a person under
investigation for participation in a conspiracy to make or
distribute methamphetamine.  They also knew that a person who
appeared connected with the occupants of the truck was detained
for shoplifting cold medicine from the Wal-Mart store as he was
walking towards the truck in the parking lot of the Wal-Mart.
This information generated a reasonable suspicion of criminal
activity.  Cf., U.S. v. Ameling, 328 F.3d 443 (8th Cir.) cert.
denied, 540 U.S. 961 (2003) (investigative stop of two persons
who had split a purchase of 4 boxes of pseudoephedrine and then
drove to another store where they reportedly bought a lithium
battery); U.S. v. Scott, 2000 WL 368441 (10th Cir., unpublished,
4/10/2000) (investigative detention of person already under
investigation for drug manufacturing after he purchased six
boxes of antihistamine tablets and immediately tried to buy six
more, but was refused); U.S. v. Araque, 255 F.Supp.2d 1010
(D.Neb. 2003) (investigative stop of car containing two persons
who made an aborted effort to purchase two gallons of iodine
from one store and a third person who later bought 15 boxes of
pseudoephedrine from a different store); see also, U.S. v.
Fisher, 241 F.Supp.2d 1154, 1163 (D.Kan. 2002) (investigative
detention of person who was observed attempting to shoplift ten

packages of lithium batteries, laying aside the batteries, leaving the store and engaging in countersurveillance shortly thereafter at a nearby store).

The detention in this case was not unnecessarily long. The officers proceeded with dispatch to investigate their suspicions. Defendants were not handcuffed prior to arrest. The court does not believe the investigative detention violated the Fourth Amendment. Probable cause is necessary for a warrantless arrest. U.S. v. Vaquez-Pulido, 155 F.3d 1213, 1216 (10th Cir.) cert. denied, 525 U.S. 978 (1998). Probable cause requires "more than mere suspicion." Id. Probable cause exists if there are facts and circumstances learned through reasonably trustworthy information "'that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested.'" Id., quoting U.S. v. Guerrero-Hernandez, 95 F.3d 983, 986 (10th Cir. 1996).

At the time Rebecca Barnhart and the others were arrested, the officers had all the knowledge which justified the investigative detention. In addition, they were aware that the truck carried containers of starter fluid and muriatic acid, as well as a rifle. They also knew that the adults inside the truck matched the description given by Taylor of the persons who purchased the 15 boxes of cold medicine at the Wal-Mart in St.

7

Joseph.  We believe this information was sufficient to support a reasonable belief that the adults in the truck had been or were in the process of committing a drug crime.

On the basis of these findings, the court shall deny Rebecca Barnhart's motion to suppress.

Defendant Rebecca Barnhart's motion to dismiss (Doc. No. 86)

Rebecca Barnhart's arrest and associated investigations led to charges being filed against her in Doniphan County, Kansas, Brown County, Kansas and Buchanan County, Missouri.   The Doniphan County charges were dismissed in favor of the Brown County charges.

On November 26, 2003 Rebecca Barnhart pleaded guilty in Brown County state court to conspiracy to manufacture methamphetamine.   The conspiracy count alleged that she conspired with Christopher Barnhart, Jeff Barnhart and Tobey G. Barnhart to manufacture methamphetamine and that she furnished or purchased precursor materials in furtherance of the conspiracy.  This guilty plea was made pursuant to an agreement which was described in open court to include the following terms:  all parties and counsel would recommend a durational departure under the state guidelines sentencing system to a term of 72 months; any sentence Barnhart received in Buchanan County, Missouri pursuant to a guilty plea she had agreed to enter in

8

that venue, would run concurrent with the Brown County sentence; and the State of Kansas would dismiss any remaining counts filed against Rebecca Barnhart in Brown or Doniphan County.

Rebecca Barnhart pleaded guilty to possession of a methamphetamine precursor drug with the intent to manufacture methamphetamine in Buchanan County, Missouri on or about January 12, 2004.

On February 17, 2004, Barnhart was sentenced in Brown County to a term of 72 months.  Her attorney argued that the case of State v. McAdam, 83 P.3d 161 (2004), which was decided after her guilty plea but before her sentencing hearing, should be applied.  Pursuant to the McAdam holding, methamphetamine crimes in Kansas were given a less severe offense level under the state sentencing guidelines system.  The district court rejected the McAdam argument and sentenced Rebecca Barnhart to 72 months. She appealed this sentence on the basis of McAdam.  The State considered the appeal to be a violation of the plea agreement.

Rebecca Barnhart was sentenced to a two-year term on the Buchanan County charges in Missouri on August 19, 2004.

On November 18, 2004 the Kansas Court of Appeals vacated her Brown County sentence and remanded the case for resentencing consistent with the McAdam case or cases which followed McAdam. The mandate from the Kansas Court of Appeals decision was filed

on December 23, 2004.  Prior to the issuance of the mandate, the Brown County District Court dismissed the case against Rebecca Barnhart pursuant to an order agreed to by the State and her counsel.

Steven Maxwell, an attorney in the Kansas Attorney General's Office, assisted the Brown County Attorney, Kevin Hill, with the prosecution of the Brown County charges.  He appeared with Hill at Rebecca Barnhart's guilty plea and sentencing hearings in Brown County.  Maxwell was appointed as a Special Assistant United States Attorney on January 24, 2004.  He spent several months in Iraq later on in 2004.

When he returned from Iraq, events took a turn which lessened the expected sentence for Rebecca Barnhart, Jeff Barnhart and Marlon Carroll.  The Kansas Court of Appeals sustained appeals where Rebecca Barnhart and Jeff Barnhart challenged their 72-month sentences from the Brown County court on the basis of the <u>McAdam</u> case.  In addition, Marlon Carroll received a sentence of probation in the State of Missouri when Kansas authorities were expecting a substantial prison sentence. Kevin Hill was preparing to prosecute these persons in Brown County on the premise that Rebecca Barnhart and Jeff Barnhart had violated their plea agreements and that there had been no agreement to drop the charges against Marlon Carroll.  Steven

10

Maxwell decided that he would seek to bring federal charges. Ultimately, the grand jury returned the original indictment in this case on December 29, 2004.  The Brown County charges were dismissed in favor of these charges.

Rebecca Barnhart contends that her prosecution in this court should be dismissed because it constitutes double jeopardy, vindictive prosecution and a violation of her due process rights. The position of the federal government is that this prosecution has been brought against all three defendants in order for them to receive a sentence consistent with the seriousness of the offense conduct and the sentences received by other persons who did not cooperate with the State of Kansas in the prosecution of the state charges.  As discussed in our prior order, Brown County defendants Tobey Barnhart and Chris Barnhart received sentences or 120 months or more for their part in the methamphetamine operation. In addition, the government contends that Rebecca Barnhart and Jeff Barnhart broke the plea agreements they made in state court by invoking the McAdam case to argue for a sentence lower than what both sides had agreed to recommend.

Counsel for Rebecca Barnhart has asked the court to consider the holding of the Kansas Supreme Court in State v. Boley, 113 P.3d 248 (Kan. 2005).  In Boley, a defendant pleaded guilty to

a methamphetamine charge in Kansas pursuant to a plea agreement in which he did not agree to recommend any particular sentence, he was not prohibited from seeking a lesser sentence, and he did not waive his right to appeal his sentence.  The defendant then successfully appealed his sentence to the Kansas Court of Appeals on the basis of the <u>McAdam</u> case.  The Kansas Court of Appeals held that on remand the State could withdraw from the plea agreement and refile the charges that were dismissed pursuant to the plea agreement, or choose to perform under the plea agreement as modified.  The Kansas Supreme Court reversed this part of the decision.  It held that the purposes of the plea agreement were fulfilled to such an extent that the State could not rescind the plea agreement, even though defendant would receive a reduced sentence as a result of his appeal.

Counsel for Rebecca Barnhart has also emphasized that the state charges in Brown County were dismissed before the mandate from the Kansas Court of Appeals was issued and that the federal charges in this case were brought just a short time after the state charges were dismissed.

The court shall reject the arguments made in Rebecca Barnhart's motion to dismiss for the reasons stated in the court's order (Doc. No. 51) denying the motions to dismiss of defendants Jeff Barnhart and Marlon Carroll.  In addition, we

12

make the following points.  First, the court finds that the regular actors who initiate and execute decisions regarding what cases are brought and how they are prosecuted in federal court in this district have not been coopted or subverted by state authorities in relation to this prosecution.  Second, the <u>Boley</u> decision is distinguishable on its facts because Rebecca Barnhart, unlike the defendant in <u>Boley</u>, did agree to recommend a particular sentence as part of her plea bargain, and then at sentencing advocated against such a sentence.  <u>Boley</u> was also decided several months after this case was filed in federal court.  Third, even if these factual distinctions are not material, <u>Boley</u> does not mandate dismissal of this case. Indeed, it somewhat buttresses the rationale for bringing this prosecution.  Under <u>Boley</u>, as construed by defendants, the State of Kansas is stuck with a sentence that the federal prosecutor (and state county attorney) believe is insufficient to punish the crimes at issue and inconsistent with the punishment given to comparable defendants.  A federal prosecution to attain sufficient and consistent punishment is not vindictive.  While defendant may argue that she is being penalized for exercising her right to appeal, the disparity between her prospective state sentence and the sentence given to other defendants convicted by the State in this matter, persuades the court that the

13

motivation is the achievement of just punishment.

Finally, the court does not believe the alleged premature dismissal of state charges prior to the issuance of the mandate by the Kansas Court of Appeals or the proximity in time between the dismissal of state charges and the filing of federal charges are persuasive arguments for dismissal. Federal charges may be filed regardless of the pendency of the state charges, and temporal proximity is only one factor and not the most important factor to consider in determining the reasons for the federal prosecution.

Defendant Marlon Carroll's supplemental motion to suppress (Doc. No. 89)

Defendant Carroll's original motion to suppress argued that Carroll was illegally interrogated without counsel by Brian Everhart of the Brown County Sheriff's Office on February 13 and 14, 2003 after he had been arrested, requested appointment of counsel and had counsel appointed. The court found after listening to the testimony of Brian Everhart and watching a videotape of the interrogation on February 13, 2003 that Carroll had initiated the contact with Everhart by communicating his desire to speak to Everhart through Cindy Herrera. We further held that Carroll had waived his Fifth Amendment right not to answer questions or give a statement. The court also considered

14

a written waiver Carroll signed on February 13, 2003, a report written by Brian Everhart and a transcript of the videotape in making these decisions.

Defendant Carroll's supplemental motion to suppress asks the court to reconsider its decision in light of the testimony of Cindy Herrera.  Herrera testified that she was arrested with Carroll and the other persons in the pickup truck that was stopped in Doniphan County on February 11, 2003.  At that time she had been living with Carroll for about a year.  After her arrest, she was placed in a holding cell in Brown County.  On February 13, 2003 she was transported to Doniphan County district court in the same vehicle as Carroll.  After a brief hearing, they were returned to Brown County.  Herrera testified that she did not talk with Carroll about the case.  In fact, she said she was instructed not to speak with Carroll about the case.  She denied telling Brian Everhart that Carroll wanted to speak with him.  Herrera cooperated with the investigation of this case and testified against the defendants in some proceedings.

Upon review of the testimony and exhibits mentioned before, the court shall not modify our decision on the motion to suppress.  The evidence indicates that Carroll and Herrera had the opportunity to talk.  Although Herrera testified that they

did not talk, the videotape of February 13, 2003 contains a reference by Carroll to what his "old lady says". This indicates that there was conversation between Herrera and Carroll. The report of Brian Everhart dated February 13, 2003 indicates that he learned through Cindy Herrera that Carroll wanted to speak with him. This is a freshly recorded recollection. We find it more credible than the testimony of Herrera about events which occurred more than 2 years before her testimony. Our conclusion is consistent with our review of the videotape. Absolutely no coercion was applied during the interrogation. The decision of Carroll to speak to Everhart appeared to be completely one of his own volition. We find that he initiated the contact with Everhart which led to the questioning.

Therefore, the supplemental motion to suppress shall be denied.

Motions to sever (Doc. Nos. 32, 83)

Motions to sever are currently pending from all the defendants in this case. The motions are primarily premised upon the potential for problems under Bruton v. United States, 391 U.S. 123 (1968) if statements made to the police by Marlon Carroll and Jeff Barnhart are introduced into evidence. Of course, severance may be ordered but is not necessarily required

when there is a potential <u>Bruton</u> problem.  <u>U.S. v. Hill</u>, 901
F.2d 880, 883 (10th Cir. 1990).  Redaction of statements can
sometimes avoid <u>Bruton</u> problems and the necessity for severance.

In this instance there is some dispute as to whether
redactions proposed by the government are sufficient to
eliminate a <u>Bruton</u> problem.  The Tenth Circuit has held:

> where a defendant's name is replaced with a neutral
> pronoun or phrase there is no <u>Bruton</u> violation,
> providing that the incrimination of the defendant is
> only by reference to evidence other than the redacted
> statement and a limiting instruction is given to the
> jury.  Where, however, it is obvious from
> consideration of the confession as a whole that the
> redacted term was a reference to the defendant, then
> admission of the confession violates <u>Bruton</u>,
> regardless of whether the redaction was accomplished
> by use of a neutral pronoun or otherwise. . . . The
> Supreme Court indicated its approval of redaction with
> non-identifying pronouns in [<u>Gray v. Maryland</u>, 523
> U.S. 185, 118 S.Ct. 1151 (1998)] when it asked why the
> statements could not have been redacted to read "Me
> and a few other guys" instead of "Me, deleted,
> deleted, and a few other guys." <u>Gray</u>, 118 S.Ct. at
> 1157.  This type of redaction avoids the problems the
> Court noted in <u>Gray</u>, <u>See</u> <u>id.</u> 118 S.Ct. at 1157.
> "[R]eferring to joint activity by use of the pronouns
> 'we' and 'they,' or by use of indefinite words such as
> 'someone,' does not draw attention to the redaction
> and thus, in most situations, will not be
> incriminating unless linked to a codefendant by other
> trial evidence." [<u>U.S. v. Edwards</u>, 159 F.3d 1117, 1126
> (8th Cir. 1998)].

<u>U.S. v. Verduzco-Martinez</u>, 186 F.3d 1208, 1214 (10th Cir. 1999)
(finding no <u>Bruton</u> violation where statement was redacted to
refer to defendant as "another person").

The court has examined the transcripts of the interviews

17

with Jeff Barnhart and Marlon Carroll that are attached as exhibits 3 and 4 to Doc. No. 100.   These exhibits contain proposed redactions which are delineated in bold underlined print.   The court does not believe the interview of Jeff Barnhart with the proposed redactions presents a <u>Bruton</u> problem which requires severance.   The court believes the interview of Marlon Carroll should have more extensive redactions to avoid a <u>Bruton</u> problem.   The court suggests the following lines be redacted from the interview of Marlon Carroll:

```
13:51:07 - 13:58:22
14:06:19
14:30:08 - 14:39:24
15:10:27 - 15:26:15
17:11:27 - 17:18:05
17:43:00 - 17:52:20
19:17:16 - 19:30:20
20:40:05 - 20:43:07
20:49:16 - 21:11:28
21:58:09
22:12:17 - 22:26:01
22:45:19 - 22:56:23
24:17:08 - 24:41:26
25:13:13
33:33:29 - 33:42:12
42:09:05 excise "Jeff"
44:29:06 - 44:35:25
44:53:18 - 45:04:09
47:48:09 - 48:17:18
49:46:05 - 49:57:29
51:24:13 - 51:47:10
52:27:14 beginning with "I thought . . . - 52:28:18
```

The court is not persuaded that there are any grounds for severance if the proper redactions are made in the statements of Jeff Barnhart and Marlon Carroll.   Therefore, on that condition,

18

the motions for severance shall be denied.

Motion for a Daubert hearing (Doc. No. 92)

This motion was filed by counsel for defendant Carroll.  At the hearing upon the motions discussed in this order it was agreed that any action upon this motion should be deferred until the motion or arguments relevant to the motion can be presented, perhaps as part of a motion in limine, at a later hearing.

Motion for discovery (Doc. No. 91)

This motion shall be considered moot.

Motions for joinder (Doc. Nos. 82, 88)

These motions shall be granted.

Motion for bill of particulars (Doc. No. 90)

Defendant Carroll has requested that the court order the government to disclose:  the identity of all known but unindicted co-conspirators; the location outside of the District of Kansas of any acts alleged in the indictment; and the precise date that defendant is alleged to have joined the conspiracy.

This has been an open file case.  In such cases, a bill of particulars is often denied.  See U.S. v. Daniels, 95 F.Supp.2d 1160, 1166 (D.Kan. 2000) (denying motion for bill of particulars in an open file case); U.S. v. Villota-Gomez, 994 F.Supp. 1322, 1336 (D.Kan. 1998) (same); U.S. v. Esteves, 886 F.Supp. 645, 647 (N.D.Ill. 1995) (same).  The court does not believe a bill of

particulars is necessary in this case, except to the following extent.  If there are names of co-conspirators that have not been revealed to the defense and that are known to the government, the court shall direct the government to disclose the names of those co-conspirators.

**IT IS SO ORDERED.**

Dated this 12th day of December, 2005 at Topeka, Kansas.


s/Richard D. Rogers
United States District Judge